**Paul Dean McKENZIE and Bruce Ray Needham, Appellants,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17775.**

Court of Criminal Appeals of Oklahoma.
March 14, 1973.

Don Anderson, Public Defender, and Jack E. Gray, Oklahoma County, for appellants.

**1334**

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., John C. Williams, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellants, Paul Dean McKenzie and Bruce Ray Needham, hereinafter referred to as Defendant McKenzie and Defendant Needham, were charged and tried in the District Court of Oklahoma County, Case No. CRF-72-56. Defendant Needham was convicted for the offense of Robbery with Firearms and Defendant McKenzie was convicted of the offense of Robbery with Firearms, After Former Conviction of a Felony. Punishment was fixed at thirty-two (32) years imprisonment for Defendant Needham and seventy-five (75) years imprisonment for Defendant McKenzie. From said judgments and sentences, a timely appeal has been perfected to this Court.

At the trial, Trannon Charles Burroughs testified that on January 7, 1972 he operated a tavern at 501 Hudson in Oklahoma City. Defendant Needham had worked for him as a bartender off and on for the past seven years and he had known Defendant McKenzie for a year or two. Both defendants had been in his bar earlier that evening, then left. They returned about 11:00 p. m. Defendant Needham walked directly to Burroughs, put a rifle in his stomach and said he was going to kill him. Defendant Needham fired several shots inside the bar. A customer, Jeannie Evans, stated, "Don't kill Chuck" and Defendant Needham struck her in the mouth with the butt of the gun. He went to the cash register and removed a handful of money. He then tossed the gun to Defendant McKenzie, who had been standing by the front door. Defendant Needham stated that at 12:00 they were going to kill everyone present. The police officers came into the bar and Defendant McKenzie concealed the weapon under his coat and slipped out the door. The police officers asked if everything was alright and he replied that it was because he was afraid that they might get shot. The officers left and he ran outside and told them about the gun and robbery.

Charles Evans testified that he was in the bar on the evening in question with his wife. At approximately 11:00 p. m., Defendant Needham walked into the bar carrying a rifle followed by Defendant McKenzie. Defendant Needham walked up to Burroughs, stuck the rifle in his stomach and said he was going to kill him. Defendant McKenzie remained at the front door guarding it. Evans, sitting at the bar, started to get up whereupon Defendant Needham fired the rifle between his legs and a second shot over his head. His wife was talking to Chris, Burroughs' wife, at this point and Needham called them over to him and struck Mrs. Evans with the rifle butt, knocking her down. Defendant Needham fired several more shots, more or less at random, then tossed the rifle to McKenzie who concealed it under his top coat. Defendant Needham stated that at 12:00 "everybody was going to die." (Tr. 66) Defendant Needham went behind the bar and got some bills out of the cash register. Defendant McKenzie remained behind the door as the police entered and then slipped out.

Officer James testified that he investigated the scene about midnight. He identified various photographs showing cartridge cases and bullet holes.

Emogene Evans testified that she was with her husband, Charles, at the bar when the defendants came in about 11:00 p. m., Defendant Needham carrying a rifle. Defendant Needham put the rifle against Burroughs "belly" and said he was going to kill him. He called her over and, as she tried to talk him out of shooting, he struck her with the rifle, knocking her down.

Officer Shaeffer testified that on the evening in question he and his partner, Officer Lewis, stopped at the Chuck and Chris Bar about 11:45 p. m. on a routing check. Upon entering, he noticed that no one was talking, no music was playing and everyone was facing the doorway. He

asked if anything was wrong and, receiving no reply, repeated the question. Defendant Needham said that nothing was wrong. He noticed that Defendant McKenzie left the bar as they entered. The officers went back outside to contact Defendant McKenzie. As they were talking to Defendant McKenzie, a man came running out of the bar yelling that he had been robbed. Officer Lewis obtained the rifle, State's Exhibit No. 6, from a car parked just outside the tavern door. They found Seventy-nine Dollars ($79.00) on Defendant Needham's person and Sixty-five Dollars and Sixty-five Cents ($65.65) was found on Defendant McKenzie's person.

Officer Thompson testified that on January 8, 1972, he interrogated Defendant Needham, first giving the Miranda warning. Defendant Needham stated that he went to the bar to return the rifle he borrowed from Burroughs. At Burroughs request, he fired into the floor one time to demonstrate that the weapon was in working order. He denied robbing or threatening anyone. Thompson testified that he also interrogated Defendant McKenzie after first giving the Miranda warning. Defendant McKenzie stated that he went to the bar with Defendant Needham to return a borrowed rifle; that no shot was fired; and that no robbery occurred.

For the defense, Sam Ballard testified that he was the early shift bartender at the tavern and that on January 7, 1972, he loaned Defendant McKenzie Twenty Dollars ($20.00).

Earlene Gibson testified that around noon on January 7, 1972 she cashed a check and repaid Fifty-three Dollars ($53.00) to Defendant Needham.

Warren Leo Burroughs testified that he was the owner of the Chuck and Chris Bar and that his brother, Chuck, managed it. He was in the bar on the evening in question and did not see Defendant McKenzie make any threats against his brother, Chuck. However, he saw "threatening gestures" made and saw Defendant Needham fire five or six shots with the rifle. Defendant Needham also took a handful of bills from the cash register. When Defendant McKenzie got the rifle, he "poked it at me and said he was going to blow my guts out." (Tr. 172)

Chris Burroughs, Chuck's wife, testified that she was working as barkeep at the tavern on the evening in question. She observed Defendant Needham with the rifle, and saw him take money from the register and threaten to kill her husband. She observed Defendant McKenzie threaten Warren Burroughs at the door. She admitted testifying at the preliminary hearing that there was no robbery. She explained that she testified differently at the preliminary hearing because she was drunk at the time of the hearing.

Defendant Needham testified that he had worked for Chris and Chuck Burroughs on and off for several years. He recounted his and Defendant McKenzie's various activities during the day of January 7, including his being repaid Fifty-three Dollars ($53.00) from Earlene Gibson and borrowing Twenty Dollars ($20.00) from Sam Ballard. He and Defendant McKenzie went to the bar late that night and Chuck Burroughs asked him to go get the rifle he was keeping for him. Gene Stokes had previously hocked the rifle to Burroughs for Twenty Dollars ($20.00). He and Defendant McKenzie went to his apartment, obtained the rifle and returned to the bar. He testified, "I walked in the door, walked towards Chuck and said, 'How would you like for me to shoot you in the leg?' and everything went haywire and everyone got excited and that is when Jeannie—I guess she came running over there and when I turned around I guess the gun hit her." (Tr. 217) When the gun struck Jeannie, it discharged. He denied shooting at anyone and did not remember shooting the refrigerator. He told Defendant McKenzie to "take the gun out to the car before this goes too far." (Tr. 219) He testified, "No I did not take no money. There was no robbery. Chuck just got mad and filed this on us and he

**1336** 

seen it was too late after it went this far." (Tr. 221)

In rebuttal, Maxwell Darks, an Assistant District Attorney, testified that he represented the State at defendants' preliminary hearing. Chris Burroughs was called at that time as a defense witness and that, in his opinion, she was drunk.

■ The first proposition asserts that Assistant District Attorney Darks improperly testified as a State's witness. Defendant cites as authority Pitman v. State of Oklahoma, No. CIV–72–102, wherein the United States District Court for the Western District of Oklahoma held that it is a violation of due process of law for a prosecutor to assume the multiple role of prosecutor and witness. We are of the opinion that the instant case is distinguishable from *Pitman, supra.* In *Pitman,* the District Attorney who was trying the case, testified in chief as a witness and also was qualified as an expert witness and testified in rebuttal. In the instant case, Maxwell Darks was neither present nor participating in the trial court's proceedings. His testimony concerned his observation of the physical condition of Chris Burroughs at the preliminary hearing. In United States v. Cerone, 452 F.2d 274, cert. denied, 405 U.S. 964, 92 S.Ct. 1168, 31 L.Ed.2d 240, the Seventh Circuit held that where counsel is not personally prosecuting, he may testify in rebuttal. We thus conclude that Mr. Darks' testimony was properly admitted.

■ The final proposition contends that the punishments are excessive. We have consistently held that this Court does not have the power to modify a sentence unless, under all the facts and circumstances, the sentence is so excessive as to shock the conscience of the Court. Roberts v. State, Okl.Cr., 473 P.2d 264. From the foregoing statement of facts, we are of the opinion that the Defendant Needham's punishment of thirty-two (32) years imprisonment is not excessive. We likewise find that Defendant McKenzie's punishment of seventy-five (75) years is not ex-

cessive considering his three prior convictions for Robbery With Firearms.

The judgments and sentences are, accordingly, affirmed.

BLISS, P. J., and BRETT, J., concur.