**Charles Martin HOLT, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–74–587.**

Court of Criminal Appeals of Oklahoma.

Jan. 8, 1975.

S. Thomas Coleman, Jr., Asst. Public Defender, for appellant.

Larry Derryberry, Atty. Gen., Bill James, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Charles Martin Holt, hereinafter referred to as defendant, was charged with another, tried and convicted alone in the District Court of Tulsa County, Case No. CRF–73–2216, for the offense of Robbery With Firearms in violation of 21 O.S. 801. An indeterminate sentence of not less than ten (10) years nor more than twenty-five (25) years in the custody of the State Department of Corrections was pronounced on the defendant in conformity with the verdict of the jury.

At the trial, the defense attorney stated in the opening statement that the defendant authorized him to tell the jury that he was guilty of the charge.

The State's first witness, Mrs. Butler, testified that she was on the 3:00 P.M. to 11:00 P.M. shift at the Colonial Manor Nursing Home in Tulsa, Oklahoma, on the 3rd of November, 1973. She was a nurse's aide, and as such, had the duty of "charting" the patients' records. That at 8:30 that evening, while she and other nurse's aides were in the process of "charting", she heard a racket and turned around. Two men were standing before her, one with a sawed-off shotgun. She identified the defendant as one of those men, and stated that she had seen him three nights before the robbery in the company of two others when they were walking down the hallway of the nursing home. The shotgun was held by an unknown man, John Doe, who was charged conjointly with the defendant. The defendant told the witness that they meant business and were after the home's narcotic supply. He asked the witness to open the narcotic safe but she did not have the key. The defendant then directed the witness to take them to the LPN who had the key. The witness complied, and explained to the LPN what the men wanted; however, the LPN said she did not have the key. She stated that it was on the other wing of the home. The men then marched the employees to the other wing, stopping at a desk where John

Doe directed the defendant to cut the phone wires, which he did. John Doe then took a medication nurse and the LPN to get the key for the narcotics locker from a desk while the defendant stood guard over the rest. John Doe then took the nurse with the key to the locker. After a fifteen to twenty minute period, the defendant met with Doe at the locker and they fled.

Victoria Billy, also a nurse's aide at the nursing home on the date and time in question, testified substantially the same as Mrs. Butler, the first witness.

The State then called Jane Perkins, a medication aide for the nursing home on the date and at the time in question. Her duties were to pass out medication and treatments to the patients of the home. She was performing these duties at approximately 8:30 P.M. on November 3, 1973. The LPN entered the room where the witness was working and informed her that she was wanted in the hallway. The witness completed attending to her patient and then stepped out into the hall. She stated that she also saw a double-barrelled sawed-off shotgun held by a sling on Doe's arm. The LPN and the witness then walked with Doe to a desk, took out the keys to the wrong cabinet and at the order of Doe, the medication aide went with him to the west station of the home where the narcotics were kept. The LPN stayed with the defendant.

Upon their arrival at the west cabinet, she told Doe that she had inadvertently picked up the wrong keys. Doe then picked up a butcher knife and put it to the witness' throat. She further explained to him that she had accidently gotten the wrong keys, thereupon, he put the knife down and forcibly broke the cabinet door open. He asked her a question and she pointed to a red box in the cabinet. He told her to get it and open it. She complied with his orders. Doe then chose a few vials of narcotics which he told the witness to stick in his pocket. Doe set the box down. He was then joined by the defendant, who the witness observed was

walking toward them. Doe admonished her that she should stay behind the desk if she knew what was good for her. The two men then exited the emergency door.

The State then rested its case.

The defense called the defendant to the stand. He stated then he lived in the Tulsa County jail and that he participated in the robbery of the Colonial Manor Nursing Home on November 3, 1973; he only had a small pocketknife with which to cut the phone lines, but never did he have a weapon, nor did he try to harm or upset anyone in the robbery.

The prosecutor then cross-examined the defendant concerning John Doe's identity, what their relationship was, and how long they were together. The defense counsel objected to the questions as being outside the scope of the direct examination, and asked for a mistrial. The court overruled both and stated that the inquiry and responses on direct examination were broad enough to cover the full gamut of the commission of the crime, the res gestae, including the defendant's involvement or participation with Doe. The defense objected to questions concerning events after the incident, which was sustained.

The prosecutor continued by asking questions concerning the defendant's drug habit and its connection with the crime; whether or not the defendant was a willful participant in the robbery; the present location and ownership of the automobile and shotgun used in the robbery. The prosecutor continued by asking about the defendant's length of stay in Tulsa County, his parents residence, and the defendant's work history. The defense then objected to these latter questions as being collateral, which was sustained. The prosecutor thereupon cross-examined the defendant concerning the use of the contraband; the defendant's age and education; his awareness of the proceedings of the trial; whose idea it was to rob the nursing home; how he knew drugs were kept in the home and for what purposes they were used; who told him to cut the phone lines; whether

or not the defendant was surprised that the two actually robbed the home that evening. The defendant's cross-examination ended with a question concerning whether or not he had demanded narcotics from the victims.

The initial closing argument for the State consisted of comments reminding the jurors that the acts of Doe cannot be pushed aside when determining the verdict and punishment of the defendant. The prosecutor further reminded the jury of the knife which was held to one witness' throat, and of the shotgun which would be used to blow the victims' heads off if they did not comply with the demands. After relaying the events of the robbery, the prosecutor asked for an indeterminate sentence of not less than fifteen (15) years nor more than forty-five (45) years, or in the alternative, twenty-five (25) years.

The defense reminded the jury that the defendant did not have the means to blow anyone's head off and that Doe had made such remarks, not the defendant.

At the outset we note from the record that the defendant refused to change his plea of not guilty; thus, the State was under burden of proving the material elements of the crime as charged. See Johnson v. State, 82 Okl.Cr. 437, 172 P.2d 337.

The defendant assigns as error questions asked during the cross-examination of the defendant, as well as the closing remarks made by the prosecutor which the defendant asserts were prejudicial and resulted in an excessive sentence for the offense committed. We agree with the ruling of the trial judge overruling the objections and motions for mistrial made by the defense attorney during the cross-examination. We find that questions concerning the accomplice, the defendant's participation in the crime, the material concerning the shotgun and automobile, the prior presence of the defendant in the nursing home, were within the scope of the cross-examination as part of the res gestae of the crime. The questions concerning the defendant's drug habit and use were

proper in the instant case to show motive for the crime. We said in Vanderpool v. State, Okl.Cr., 501 P.2d 871 (1973):

> Evidence of other offenses is generally inadmissible unless it is material and proper to show motive, intent, absence of mistake or accident, identity of person charged with commission of crime for which an accused is put on trial, or common scheme or plan embracing two or more crimes so related to each other that proof of one tends to establish the other.

We further agree with the rulings of the trial court to the timely and accurate objections of the defense attorney during the cross-examination of the defendant, which properly limited the scope of the cross-examination and prevents Mr. Hopper from pursuing his tendency to make inquiry into collateral and prejudicial matters. Mr. Brunton, in his closing argument, made clear that while the defendant was equally guilty of the crime with the accomplice, Doe, the defendant did not have the means to "blow their heads off" as the prosecutor was urging the jurors to believe.

The jury's sentence of from ten (10) to twenty-five (25) years cannot be seen to be excessive due to any alleged prejudicial statements made by the prosecutor in view of the fact that the prosecutor requested the punishment to be set at from fifteen (15) to forty-five (45) years. The sentence of ten (10) to twenty-five (25) years is in conformity with other sentences assessed for the offense. See McKenzie v. State, Okl.Cr., 507 P.2d 1333; Cowan v. State, Okl.Cr., 507 P.2d 1256; Ellis v. State, Okl.Cr., 503 P.2d 575; Saylor v. State, Okl.Cr., 503 P.2d 226. The sentence in this case is not such as to shock the conscience of the Court, and therefore, cannot be modified.

For the above and foregoing reasons, the judgment and sentence appealed from is affirmed.

BLISS, P. J., and BRETT, J., concur.